May it please the court. On behalf of the Campaign For California Families, we respectfully request that this court reverse the district below and grant the campaign intervener status. The campaign has a protectable interest in, under the facts of this case, that interest is not being adequately protected. The fact that it has an interest and the fact that it needs an aggressive defense and representation is highlighted even more so when the fact is that none of the named defendants are defending the merits of this case. In fact, one of them, the Attorney General, is not only not defending the case. Yeah, but there is an intervener already in the case that is asserting your position. Yes, part of it, but not all of it, Judge Reimer. In fact, in this particular case, the plaintiffs have been joined by the Attorney General, who has conceded the unconstitutionality of Proposition 8. This isn't just a quantity game. I mean, the numbers don't, on either side, don't really make any difference. The point is that there is somebody with a very solid interest in defending Proposition 8 on your side. Yes, the Proposition 8 proponents. But the Proposition 8 proponents primarily are concerned with Proposition 8 and not necessarily the broader picture. I don't understand the difference. I just don't understand it. Well, Proposition 8 could be defended, for example, on more narrow positions, such as the Amendment 2 in Colorado, the Rumber decision, that, in fact, it does not have a broad classification and it does not have animus toward a particular class. If you look at the stipulations in the case management that the Proposition 8 defendant interveners have actually agreed to, there are some serious issues that undermine and impair the interest of the campaign and that show that it's not having adequate representation. For example, in paragraphs 19, 20, 21, 24, 26, 28, 35, 36, 38, 59, 64 and 65, those particular paragraphs actually essentially give a lot of ammunition to the plaintiffs with regards to the suspect classification. You could actually, in fact, under the city of Cleaborn, has four prongs for suspect classification, a history of pervasive discrimination, whether or not the classification bears any relation. Isn't a decision about whether to stipulate to certain facts and or to say, well, if the form is changed, maybe we could stipulate, which is what mostly was said. A matter of trial strategy and tactics and not substance and objective. Well, this is more than just trial tactics and strategies. In fact, if you look at some of the stipulations, for example, one of the stipulations is that, and this goes to one of the four prongs of the city of Cleaborn to determine whether there's a suspect class as to whether there's heightened scrutiny. They stipulated that sexual orientation defines a discrete class. That is an impairment to the campaign's interest, and it doesn't adequately represent this particular case because there is a lot of raging debate that's taking place within the literature and among the experts as to even the definition of sexual orientation. Does it include heterosexuality, gays and lesbians, transsexuals, bisexuals? What is, in fact, the definition? And yet they stipulated that sexual orientation is a discrete class, and that goes right to the very heart of whether or not there's a suspect class at issue, and it goes right to the very heart. It doesn't determine whether there's a suspect class to say that there could be a discrete group that could be considered because whether they say it or not, that's what the plaintiffs say. And if they lay out their case in the case management, they march through rational basis, heightened review, and indicate how they're going to oppose each of those. So isn't what you're talking about a question of degree, not ultimate results? No, Your Honor, I don't believe so. I think it goes to the ultimate results because you can indicate how you're going to oppose these particular allegations in the complaint, but then to stipulate as undisputed facts when, in fact, there's a lot of dispute on some of these issues. Certain components that would give the background for suspect classification undermines the very issue and impairs the campaign's interest. There's no federal court including this court. I guess that one of the questions I have on that is, you know, a lot of these issues, and we don't have here the full list of what stipulations will or won't be made, but there are tactical judgments that attorneys make, sometimes because the overwhelming weight of the evidence is such that it would be folly to make a different position. And so given that, it seems to me that as I read all of your statements and go through the list that you have carefully laid out, that it is a matter of a different way of looking at the case, but not the ultimate result. Your ultimate objective is the same, isn't it? And that is to make a determination that traditional definition of marriage is the union of a man and a woman. Is that the ultimate? That's the ultimate definition on Proposition 8. But more is challenged than just Proposition 8 itself. Well, they also have, yes, they have also, the plaintiffs, as I understand it, have put on the table the California statutes, correct? Correct. But if you look at Prop 22. California statutes are already dead ducks, aren't they? Well, not necessarily. I mean, you could, for example, if the plaintiffs obviously win, we're obviously impaired. But if they lose, we could still be impaired if too much is conceded. But the Supreme Court has already declared those statutes in valor, and nothing that happens in this lawsuit can affect that. It's done. That's correct. I just don't understand what you mean when you say there's a broader, there's some kind of broader interest here. Because you could uphold Proposition 8 under a narrow defense but concede too much and lay the groundwork for the suspect classification, which ultimately gives rise to the 14th Amendment equal protection claim that is brought forth by the plaintiffs in this case. This court has rejected suspect classification for sexual orientation, and no federal court of appeals in the country has accepted it. Yet there are certain stipulations in this case by the defendant interveners that actually move down the road towards suspect classification. One of those, for example, is immutability in the city of Claiborne. And, for example, their particular stipulation, Number 26, goes to the issue of reparative therapy, whether or not it's a fluid concept. There is a big debate within the sociological and psychological community. What they say on their case management statement at ER 85, they say, we will dispute plaintiff's claims that homosexuality is immutable. I know they say that, but then in Number 26, they say that to actually change homosexuality can be harmful. The APA task force that just came out in August of this year indicates that there is no evidence that shows that change is harmful. That goes to the immutability situation as to whether or not it's a fluid concept, whether or not you can have an orientation of... But they have said that they will challenge it as immutable, and to the extent that there are some nuances there, you're also permitted to come in as an amicus, aren't you, and to point out for purposes of the court's analysis how one... or at least in your view, how this ought to be analyzed. We can come in as an amicus, but this court is already in the Forest Conservation Council, indicated that amicus may not be necessarily one that protects the interest of the proposed interveners. In this case, it would not, because we could only file an amicus brief on issues that have been raised. Issues that have been waived or issues that have been stipulated to as though there's no dispute in the sociological and psychological community, we can't raise those. We can only go on what has been raised. And on the one hand, yes, they say that they will challenge immutability, but on the other hand, they stipulate the things that go right to the very heart of immutability where the literature, and this is where the campaign would come in, would bring in the literature and the experts to address those core things that underline some of these suspect classifications. So even if they were to win Proposition 8, the fact is, in the process, they could stipulate away a lot of other things that would impair the campaign's interest. We don't believe that... What is the interest? Well, the interest is defending the definition of marriage and families. Okay, so in that respect, aren't you simply articulating a point of view that is held and shared in an undifferentiated way by all who supported Proposition 8? No, Your Honor. In fact, for the past decade, the campaign has been actively involved in this. It has been actively involved as an advocate and in lots of other ways. But on that point that you just said, aren't you just expressing a point of view that is shared generally by everyone who supported Proposition 8? How is your interest, particularized interest, affected? I think it's affected not only in the definition of marriage, but it's also affected with regards to the core essence of family or child-rearing. In fact, in this particular case, they've stipulated that sexual orientation has no relationship to child-rearing, and that is a major debate within the sociological and psychological literature and among the experts, and yet it is part of a stipulation that would be the case in this particular matter that they're literally giving away. But, you know, when we look at the cases, and maybe you can help me, maybe there's some cases we haven't looked at, but what we're benchmarking against on an abuse of discretion standard is whether the ultimate objective is the same. And so even if you take basically Prop 22, which I understand your group was quite active and took the lead in basically as the proponent. Well, one of them, not the only. No, but you were a major player, is that right, in the Prop 22? Yes. That circles around to the family code, which Judge Reimer referenced, now declared or invalid by the California Supreme Court. But the words of that family code are essentially the words that are both in the case management statement and Prop 8. Isn't that the ultimate objective here is to basically uphold that principle? That is part of the objective, but not the only objective. The campaign also filed a lawsuit against AB 205 that was passed in 2003 that became effective in January of 2005 and argued it at the trial court and the court of appeals. That ultimately had the broader concept of family and the rights that associate with same-sex relationships. But what would preclude you from having parallel litigation on issues that extend potentially beyond this litigation? Because if at the end of the day, even though Proposition 8 were perhaps upheld, and if it were upheld on a narrow ground and some of these stipulations become part of this case, then the campaign's interest going forward is going to be significantly impaired. This particular stipulation or proposed stipulations as part of the case management essentially move, like, for example, not only on the immutability but on the childbearing, also on long-term relationships, whether or not that has anything to do with sexual orientation. In the literature with regards to male versus female same-sex relationships or same-sex attraction, it's significant. Is it fair to say that your underlying differences are factual, not legal? Well, they are legal. In what respect are they legal? In the sense of the suspect classification. But the factual stipulations that are being given away here ultimately give the groundwork and the platform for the equal protection claim that is being put forward by the plaintiffs, which is the- Are you afraid they're going to lose the lawsuit because of these stipulations, or are you concerned that somehow something that they might stipulate to might somehow later have some effect on your ability to sell the policy position that your organization takes? Well, let me say that in two ways. First of all, the counsel for the plaintiffs and the counsel for the defendant-intervenors are fine counsel, but the defendant-intervenor counsel represents a client, and that client has a sole focus, and that focus is Proposition 8 alone. And so we're afraid that it would ultimately not only lose it based upon some of these stipulations, but it would impair us even if we were to win Proposition 8 on some of the other interests relevant to the campaign as it goes forward in defense of family. And why does that give you standing to intervene in a lawsuit? That is a generalized policy position. Well, we are very concerned about the ultimate disposition of this case based on these stipulations. That is our primary concern, and that's why we are here. I see that I'm running low on time, so I'd like to reserve the remaining for rebuttal. Thank you. Thank you, Your Honor. Good morning. May it please the Court. I represent the official proponents. As the Court knows, we're appellees here. We're defendant-intervenors in the underlying matter. The trial court correctly denied the campaign's motion to intervene because they did not have a significantly protectable interest and because in all events, whatever interest they have is adequately represented by my clients. And I would like to take those in the reverse order, if I may. First of all, I submit, as the Court has indicated, that we share the same ultimate objective in this case with the proposed intervenors, the campaign, namely to uphold Proposition 8. This Court's cases make clear that where an initiative is challenged, the ultimate objective is upholding the initiative. As this Court's questions make clear, the other interests asserted by the campaign are not substantial. First of all, they talk about the statutes. However, as the Court indicated, those statutes have already been striped down by the California Supreme Court and under the California Constitution. And if they have any continuing validity, that is only because of Proposition 8. So they rise or fall with Proposition 8. Although, you know what, here's how I hear their argument. First of all, let's say you lose this case. They're saying one of the reasons you might lose it is because basically you've given away part of the store in the stipulations. So address that. But on the other hand, they say, and even if you win it by making certain concessions, you've laid the groundwork for a legal decision that would basically cut them off at the pass on some of their downstream arguments. So if you would address those. Yes. Let me start with the second half of that question. To the extent they assert some kind of a broader interest that goes beyond Proposition 8. It's not very concrete about what that interest is. The only concrete thing I can think of for parsing the brief is perhaps they would like to repeal the domestic partnership laws in California. That's not an issue in this case. Any sort of speculation about underlying holdings in this case implicating that is far too tenuous under this court's precedence to support, to constitute a significantly protectable interest. As for as for losing the case, they have to show because we have to share the same ultimate objective. There's a presumption of adequacy of representation and they have to make a compelling showing to overcome that. And as the court made clear, differences in strategy are not enough. And I want to be clear about these so-called stipulations. The district court directed us to identify areas where we might be able to reach stipulations. But that's the context in which this arises. We're not trying to give away the case. And as for this, every specific stipulation that he mentioned while he was at the stand, we indicated a willingness to talk about it. We did not enter any of the ones he mentioned here. OK, now, and in general, that's true for most of the things that they've cited in their brief as well. As far as the stipulation so-called stipulations related to the state's interests in the rational basis and procreation and childbearing, we did not stipulate to the matters we indicated a willingness to talk about it. We did not reach an agreement. We did not enter stipulations. We have asserted we have a robust defense under the rational basis standard of Proposition eight, including asserting interests in procreation and childbearing. The same is true for immutability. While we indicated a willingness to talk about some of those issues, we have not entered the specific stipulations besides. And we are, in fact, contending that sexual orientation is amorphous, lacks a subtle definition and that it is mutable. We're also arguing that that conclusion is compelled by this court's controlling precedent. So we are simply not giving away the store on that. There are two areas where we have stipulated to some degree that they are legitimately concerned about. He did not. Well, I legitimately let me retract that. But it's not baseless what they're saying. And that those are one with regard to the issue of whether sexual orientation bears any relation to an individual's ability to contribute to society. As a general matter, we're not contesting that. But we've made very clear that we think that is not true with respect to certain matters relating to procreation. And we've also made clear that we understand that broadly enough to include certain matters relating to childrearing. In particular, we've talked about. We've argued that only biological parents share can share a genetic link. A direct genetic link with their offspring. And because of that, biological parents are the are the optimal childhood environment. We've made that argument. We've also argued that because of those differences relating to procreation, that cuts against heightened scrutiny. And so we've argued that very aggressively as well. I guess I was reading your stipulations. You've accepted procreation, but in effect admitted that homosexuality doesn't affect a person's ability to contribute or perform to society. Except with respect to certain matters relating to procreation. So are you saying that the procreation point, in your view, loops in the family or the child? Yes. And I think our arguments are quite clear on that front. We've talked about the fact that a mother and father by naturally reproducing can have the kind of relationship where both parents have a biological link to the child. And that is an optimal situation for childrearing. And what was the second point that you thought? Maybe. Yes. And with regard to a history of discrimination. Yes. We have admitted that gay and gay men, lesbians have suffered discrimination in the past and that they continue to suffer instances of discrimination, albeit in increasingly rare circumstances. On the other hand, we've made clear that we don't think that gays and lesbians face severe discrimination today, especially in California. Now, that is relevant to hide and scrutiny. But we believe it is. We believe the contrary position is factually untenable. And we also believe it's foreclosed by this court's binding precedent in high tech gays. We are not. So you believe that it's a tactical decision. Indeed, your honor. We think we would be fighting uphill. We would be wasting resources that there's that's a fight that can't be won, we believe. However, we also have argued more generally that the same precedents that have those holdings are in our favor on the other aspects of hide and scrutiny. And in fact, the binding precedent from this court and persuasive precedent from every other federal court of appeals to address the issue holds that sexual orientation is not a suspect classification. And we've asserted that vigorously now. Now, stepping back more generally, I would agree with that. If the if the proposed interveners, the campaign wants to add to these matters, it can do it can do so through an amicus filing. In fact, because these are legislative facts, it's free to submit studies, scholarly articles fleshing out these issues. In fact, in the city of Cleveland, which they cite at great length, the Supreme Court relied on submissions from a Mickey in determining that mental disability was not a suspect class. And there's no reason that couldn't happen here. They think there are additional materials that the court ought to consider. Now, I have agreed with opposing counsel from the plaintiffs below. But on my side here that he is going to take the remainder of the time. So unless the court has further questions for me, I'll sit down and turn the time over to Mr. McGill. Thank you, Mr. Nielsen. Thank you, Mr. McGill. Good morning, Your Honors. Matthew McGill for the plaintiffs were appellees before this court. The idea that the official proponents of Proposition 8 are not vigorously contesting the plaintiff's claims or somehow giving away the store in this litigation is absolutely ridiculous. I would urge the court to look to the official proponents' responses to our requests for admission, which are at the supplemental excerpts of the record, pages 273 to 285. It's the relevant part. The proponents deny that gay men and lesbians currently are suffering from any severe discrimination in California. They also deny that sexual orientation is fundamental to a person's identity. They deny that sexual orientation is even an identifiable characteristic. They leave it open to argue that sexual orientation does indeed impact a person's ability to contribute to society. They argue specifically that lesbian and gay parents provide a less healthy environment for children than heterosexual parents. And I deposed on Friday the plaintiff's expert that they proffered for that position. And they, perhaps because of that, they argue, this is excerpt of record 276, request for admission number 25, they argue that in some circumstances sexual orientation can and should be changed. The only thing that they've conceded so far is that my clients, merely because they're gay, do not suffer from impaired judgment or some other mental disease or defect. That's the only fact that's been conceded so far. Is that in the admissions or is that part of the case? That's numbers 20 and 21. That's excerpts of record 274 and 275. Those are the only facts the plaintiffs thus far have been willing to concede, is that my clients do not suffer from mental disease or defect, a fact that is agreed with by the American Medical Association, American Psychiatric Association, American Psychological Association. Virtually anyone who has any claim to real science agrees with that fact. The fact that the defendant intervenors, the official proponents of Proposition 8, are not running uphill against science is at most a tactical judgment. It's not, I believe, it's not what I believe this Court had in mind when they said that to adequately represent the claims of a non-party, that they have to be willing to make all available arguments, any argument that the applicant would make. I think what this Court had in mind there was any legal argument that the applicant would make, not any factual argument that an applying intervenor might want to make. So I think the record here... Well, let's step back from that because there could be concessions that the proponents would make that would, for example, totally undermine a suspect class argument, correct? It's conceivable that... I don't think that it's clear from the case law that the ultimate objective, if somebody were to make concessions that would pull the rug out from under your objective, that somehow you have to say, well, we do have the same objective even though you would, for example, the other party would take unreasonable and unbelievable positions that might in fact undermine that. So the facts do play in, don't they? I don't disagree with that. But, I mean, what's absolutely clear based on the record now exists before the District Court is that the official proponents of Proposition 8 are contesting each and every fact that might be relevant to suspect classification. They have conceded no ground other than that my clients do not suffer from mental disease or defect and that are able to contribute to society in some nominal way. The applicant intervenors here, their claim fails for an additional reason. Separate and apart from the adequacy of the proponents' representation here, the Campaign for California Families has no legally protectable interest in Proposition 8. They have very strong feelings that marriage should remain between man and a woman and only between one man and one woman. They have very strong feelings about that. But if strong feelings were enough, then the Northwest Forest case would have to have come out the other way. In that case, the Oregon Conservation Council, they felt very strongly about the timber sales statute at issue in that case, yet intervention was denied because they had no concrete or particularized, any concrete interest particularized to themselves. All they had was an objection to a law in which they had no real involvement in its passage or enactment. The same is true here. I think the record in this case and the public record is quite clear where the Campaign for California Families stood on Proposition 8. Up until about the summer of 2008, the Campaign for California Families and their predecessor organization argued for a different ballot initiative, one that would not only preserve marriage as between one man and one woman, but also would strip gays and lesbians of any domestic partnership rights, that which the Campaign for California Families calls homosexual marriage by another name. When they were unable to raise enough funds to get that initiative on the ballot, they threw their support behind Proposition 8. But the mere fact that they supported Proposition 8 does not give them a protectable interest in this litigation. It makes them just like every one of the 7 million voters that voted for Proposition 8. There is nothing to distinguish the campaign from those voters other than the fact that Mr. Thomason stumped around California urging people to vote for Proposition 8. That's not enough. If it were enough, then Rule 24 would have to be substantially revised, or at least the Advisory Committee notes to Rule 24. The Advisory Committee notes to Rule 24 tell us that the applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19A21. That's joined her as a necessary party. I don't believe that anything that the campaign has told us today or in its pleadings demonstrates they're in any way a necessary party to this action. The Court has no further questions. Thank you, Mr. McGraw. It wasn't the campaign that did that, as was mentioned. It was a completely separate and different organization. The campaign has been involved for over a decade in supporting marriage and family, and in fact was an intervener in the Smelt case and the federal challenge to the Defense of Marriage Act and argued it at the district court, at this court, and then back at the district court. For over 10 years it's been actively involved. And this Court's decision in Preet where it allowed the AFL or at least it said that the AFL-CIO had a protectable interest in supporting Measure 26, even though in that case the proponent of Measure 26 was also part of the case, this Court found it had a protectable interest. But even if there's a protectable interest, you need to meet all of the criteria in the statute so doesn't it circle us back to adequacy of representation? It does. First of all, there is a protectable interest, and second, in the absence of the campaign being here, its interest will be impaired, and finally it's not adequately represented because some of these stipulations, and it's not just a stipulation, as was said, that the defendant intervener stipulated that his clients don't have mental illnesses. That stipulation is much broader than that. And there's a lot of stipulations. There's maybe things that were done after the case management that he was referring to. But the case management report has those proposed stipulations, and those proposed stipulations essentially give away the essence of the suspect classification. We request that this Court grant intervention status from the District Court. Thank you. Thank you. Thank you, Counsel. The matter of this argument will be submitted and the Court will stand in favor.
judges: Rymer, McKeown, Smith M.